FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 21, 2019

SEAN F. McAVOY, CLERK

1

2

3

4

5            UNITED STATES DISTRICT COURT
6            EASTERN DISTRICT OF WASHINGTON

7    DALE W.,[1]                          No.    4:19-CV-5005-EFS

8                    Plaintiff,

9            v.                           **ORDER DENYING PLAINTIFF'S
                                          SUMMARY-JUDGMENT MOTION
10   ANDREW M. SAUL, the Commissioner     AND GRANTING DEFENDANT'S
     of Social Security,[2]               SUMMARY-JUDGMENT MOTION**

11
                    Defendant.
12

13

14       Before the Court are the parties' cross summary-judgment motions. ECF

15   Nos. 12 & 13. Plaintiff Dale W. appeals a denial of benefits by the Administrative

16   Law Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical

17

18   _____

     [1] To protect the privacy of the social-security plaintiff, the Court refers to him by
19
     first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).
20
     [2] Andrew M. Saul is now the Commissioner of the Social Security Administration.
21
     Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R.
22
     Civ. P. 25(d).
23

opinions; 2) discounting Plaintiff's symptom reports; and 3) improperly conducting

step four. In contrast, Defendant Commissioner of Social Security asks the Court to

affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record

and relevant authority, the Court denies Plaintiff's Motion for Summary

Judgment, ECF No. 12, and grants Defendant's Motion for Summary Judgment,

ECF No. 13.

## I.     Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an

adult claimant is disabled.[3] Step one assesses whether the claimant is currently

engaged in substantial gainful activity.[4] If the claimant is engaged in substantial

gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to

step two.[6]

Step two assesses whether the claimant has a medically severe impairment,

or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied. [8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

economy—in light of the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title II disability insurance application, alleging a disability onset date of July 1, 2010.[18] His claim was denied initially and upon reconsideration.[19] An administrative hearing was held before Administrative Law Judge Stewart Stallings.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 189-90.

[19] AR 126-32, 134-39.

[20] AR 34-82.

- Step one: Plaintiff had not engaged in substantial gainful activity since July 1, 2010, the alleged onset date, through the date last insured of March 31, 2017;

- Step two: Plaintiff had the following medically determinable severe impairments: bilateral knee complaints with evidence of medial joint space narrowing and patellofemoral chondromalacia, and left knee anterior cruciate ligament and probable medial meniscus tears, diabetes, sleep apnea, hypertension, gastroesophageal reflux disease (GERD)/Barrett's esophagus, obesity, and depression;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform sedentary work and:

  > he could never climb ladders, ropes, and scaffolds, and could only occasionally (1/3 of the workday) climb ramps and stairs, and rarely (no more than 15% of the workday) stoop, crouch, kneel, or crawl. He would have needed work that required no more than brief and superficial interaction with the general public, and only occasional interaction with coworkers and supervisors.

- Step four: Plaintiff was capable of performing past relevant work as a research and development assistant and therefore was not under a

disability at any time from July 1, 2010, the alleged onset date, through March 31, 2017, the date last insured.[21] When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the reviewing opinion of Patricia Kraft, Ph.D.;
- limited or partial weight to the examining opinion of James Opara, M.D.;
- some weight to the reviewing opinion of Gerald Peterson, Ph.D.;
- little weight to the treating opinion of James Vaughn, Ph.D.; and
- no weight to the reviewing opinion of Norman Staley, M.D.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

---

[21] AR 12-31.

[22] AR 22-23.

[23] AR 20.

[24] AR 1-6.

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

---

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply that evidence cited by the ALJ or by the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

## A.    Medical Opinions: Plaintiff failed to establish consequential error by the ALJ in weighing Dr. Vaughn's opinion.

Plaintiff challenges the ALJ's assignment of little weight to the opinion of his treating physician, James Vaughn, M.D.[33] The record reflects that Dr. Vaughn treated Plaintiff from 2015 to 2017.[34] Dr. Vaughn issued a medical opinion in October 2015.[35] Dr. Vaughn diagnosed Plaintiff with bilateral knee osteoarthrosis, sleep apnea (severe), and GERD/Barret's, and opined that Plaintiff would have pain due to his knees and stomach, that he was "unable to walk or stand long," that he would miss four or more days of work per month because he "would be unable to

---

[30] *Id.*

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[33] The ALJ mistakenly referred to Dr. Vaughn as "Dr. Vaugh." AR 23. This error is inconsequential.

[34] AR 554-56, 583-87, 594-95, 602-03, 608-09, 618-19, & 632-33.

[35] AR 642-44.

work much at all" as "he is greatly impaired," and that Plaintiff's exertional level was severely limited, i.e. he was unable to lift at least two pounds or unable to stand and/or walk.[36]

Dr. Vaughn's opinion was contradicted by the evaluating opinion of Dr. James Opara, M.D., who opined that Plaintiff had no physical limitations.[37] Accordingly, the ALJ, who is tasked with weighing conflicting medical opinions, was required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Vaughn's opinion.[38]

---

[36] AR 642-43.

[37] AR 376-81.

[38] The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician, and 3) a non-examining physician. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating physician. *Id.* However, when a treating physician's opinion is contradicted by another physician's opinion, it may be rejected with "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.).

The ALJ discounted Dr. Vaughn's opinion because 1) there was no basis in the record for this limited assessment, and 2) Plaintiff was working part-time when the assessment was provided.[39] Plaintiff failed to establish that the ALJ's weighing of Dr. Vaughn's opinion was erroneous.

First, an ALJ may reject a treating physician's opinion if the opinion is unsupported by the physician's treatment notes and objective findings and the objective medical evidence.[40] Here, Dr. Vaughn's treatment notes did not reflect any lower-extremity strength or range-of-movement limitations resulting from Plaintiff's impairments. Instead, Dr. Vaughn's treatment notes focused on Plaintiff's claimed neck strain, but again, generally noted normal range of neck motion.[41] Therefore, although 2014 imaging revealed a complete tear of Plaintiff's

---

[39] AR 23.

[40] *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). *See also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

[41] AR 554 (July 21, 2015: noting normal range of neck and musculoskeletal motion); AR 555-56 (Aug. 4, 2015: same except noting muscular stiffness to the upper trapezius distribution bilaterally); AR 583-84 (Sept. 4, 2015: noting normal range of neck motion, supple neck, and no thyromegaly present); AR 586-87 (Oct. 2, 2015: noting normal range of musculoskeletal motion but continued stiffness to the

left anterior cruciate ligament in his left knee and that Plaintiff had bilateral

medial compartment joint space narrowing in his knees consistent with mild

degeneration, Dr. Vaughn did not document any abnormal musculoskeletal

findings or gait associated with Plaintiff's conditions.[42] Likewise, evaluating

physician Dr. Opara observed a normal gait, range of motion of all joints

(notwithstanding a slight tenderness on palpation of the back of the neck), normal

muscle bulk and tone, and full strength in the upper and lower extremities, no

problem going in and out of the exam room, no problem taking his shoes off and on,

_____

posterior neck muscles, worse on the left); AR 594-95 (Dec. 2, 2015: some limitation

to active range of motion to neck and normal upper back musculature, referring

Plaintiff for physical therapy for deep tissue myofascial release techniques focused

over the left upper trapezius and levator scapulae); AR 599-600 (Jan. 21, 2016:

noting normal range of neck and musculoskeletal motion, supple neck, and no

thyromegaly present); AR 602-03 (March 22, 2016: noting normal range of neck

and musculoskeletal range of motion); AR 608-09 (June 22, 2016: normal range of

neck and musculoskeletal range of motion, supple neck, and no thyromegaly

present); AR 618-19 (Sept. 22, 2016: normal range of neck motion, supple neck, and

no thyromegaly present, recommending seeing Plaintiff back in six months); AR

632-33 (March 22, 2017: same, recommending seeing Plaintiff back in twelve

months).

[42] AR 462-64.

and a negative straight leg raise.[43] Similarly, a sleep study indicated that Plaintiff's sleep apnea improved with a CPAP machine, his nasal polyps improved when Plaintiff used the prescribed nasal steroids, and that his GERD was improving or under control.[44] On this record, the ALJ's finding that Dr. Vaughn's extreme opinion is not consistent with either Dr. Vaughn's treatment notes or the other objective medical evidence is specific, legitimate, and supported by substantial evidence. While the ALJ could have aided this Court's review by citing to records within the ALJ's paragraph relating to Dr. Vaughn's opinion, the Court must consider the entire record and not simply the evidence cited by the ALJ.[45] Plaintiff seems to argue that by looking to evidence not cited by the ALJ the Court is relying on improper *post hoc* rationalizations to justify the ALJ's rejection of Dr. Vaughn's opinion. However, the ALJ expressly found that there was "no basis in the record" for Dr. Vaughn's extreme assessment and the ALJ summarized much of the medical evidence.[46] The Court reviewed the entire record to determine whether the ALJ's finding that Dr. Vaughn's assessment was not supported by the medical evidence was legitimate and supported by substantial evidence—substantial evidence in the record supports the ALJ's legitimate finding.

[43] AR 377-80.

[44] AR 473, 362-65, 577, & 540.

[45] *See Lingenfelter*, 504 F.3d at 1035; *Black*, 143 F.3d at 386.

[46] AR 20-23.

Second, an ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity, such as part-time work.[47] Here, the ALJ found that Plaintiff was working part-time when Dr. Vaughn's "assessment was provided" in October 2015. However, Plaintiff correctly points out that he was not working in October 2015, but instead he last worked the first quarter of 2015. While there is a reasonable dispute as to whether Dr. Vaughn, who "describe[d Plaintiff's] limitations as they existed on 06-30-2015 and before," considered Plaintiff's condition when he last worked during the early quarter of 2015 or thereafter after, any error by the ALJ in discounting Dr. Vaughn's opinion because it was inconsistent with Plaintiff's part-time work is harmless. Plaintiff failed to show that his conditions changed to such extent since the time he stopped working part-time in 2015 to either June 2015 or October 2015 in order to support Dr. Vaughn's extreme limitations. As discussed above, Dr. Vaughn's extreme opinion was not supported by his treatment notes, the imaging, or other objective medical evidence. Moreover, the ALJ offered another legitimate reason supported by substantial evidence to discount Dr. Vaughn's opinion—that it was not supported by the medical evidence.[48] Plaintiff failed to establish consequential err.

---

[47] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

[48] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (recognizing that an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

**B.**     **Plaintiff's Symptom Reports: Plaintiff failed to establish the ALJ improperly discounted his symptom reports.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[49] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[50]

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence.[51] Specifically, the ALJ found Plaintiff's symptom reports inconsistent with the objective medical evidence, that Plaintiff's conditions remained under control with treatment, and that Plaintiff was independent in all activities of daily living.[52]

---

[49] *Molina*, 674 F.3d at 1112.

[50] *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

[51] AR 20-23.

[52] *Id.*

First, as to Plaintiff's claim that his physical impairments were disabling, with significant fatigue, the ALJ found that the objective medical evidence did not support this claim.[53] Symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[54] However, medical evidence is a relevant factor in considering the severity of the reported symptoms.[55] In contrast to Plaintiff's reported disabling symptoms due to his physical impairments, pain, and fatigue, the ALJ found that the medical evidence supported a finding that Plaintiff was able to perform sedentary work with positional and social limitations.[56] This finding is rational and supported by substantial evidence. As discussed above, the ALJ highlighted that the medical examinations revealed largely normal gait, strength, and range of movement, notwithstanding Plaintiff's knee impairments, and that Plaintiff's GERD, nasal polyps, diabetes, and other physical conditions were fairly controlled. That Plaintiff's symptom reports were not supported by the objective medical evidence was a clear-and-convincing reason to discount Plaintiff's symptom reports. Moreover, to such extent that Plaintiff's limitations were supported by the medical

---

[53] AR 21.

[54] *Rollins*, 261 F.3d at 857.

[55] *Id.*

[56] AR 19-20.

evidence, the ALJ crafted an RFC that included a sedentary limitation, postural limitations, and social limitations.[57]

Next, the ALJ discounted Plaintiff's reported symptoms on the grounds that with treatment they were largely stable with no significant symptomatology.[58] That a claimant's conditions improved with treatment is a relevant consideration for the ALJ when assessing the claimant's reported symptoms.[59] Here, the ALJ highlighted that, in February and July 2015, Plaintiff's diabetes, dyslipidemia, hypertension, and GERD were found to be controlled when he was taking his medication.[60] The ALJ also found that the record reflected that Plaintiff's hypertriglyceridemia also remained stable.[61] These findings are supported by substantial evidence. That Plaintiff's impairments were largely stable with no significant symptomatology was a clear and convincing reason to discount Plaintiff's reported disabling symptoms.

The ALJ also discounted Plaintiff's reported fatigue and associated concentration, persistence, and pace difficulties because Plaintiff had not complied

---

[57] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[58] AR 21.

[59] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

[60] AR 540, 555, 577, 599, & 608.

[61] AR 589, 592, 607-08, 615, 619, 623, & 631.

with recommended treatment.[62] Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.[63] Here, the ALJ highlighted that, although Plaintiff had been routinely recommended to alter his diet and maintain a sleep schedule, Plaintiff failed to do so.[64] On this record, the ALJ reasonably found that Plaintiff failed to follow treatment recommendations. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

Finally, the ALJ discounted Plaintiff's reported disabling symptoms because Plaintiff continued to be independent in all activities of daily living.[65] The ALJ may consider whether a claimant spends a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions and whether these pursuits are inconsistent with the reported disabling symptoms or indicate capacities that transfer to a work setting.[66] Here, the ALJ found that Plaintiff performed housekeeping, laundry, shopping, and took care of his son.[67]

---

[62] AR 22.

[63] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[64] *See e.g.*, AR 626 & 628.

[65] AR 21.

[66] *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.

[67] AR 21.

The ALJ though did not further discuss or flesh-out these activities. Any error in relying on Plaintiff's daily living activities to discount Plaintiff's symptom reports is harmless, however, because the ALJ gave other clear-and-convincing reasons supported by substantial evidence for discounting Plaintiff's reported disabling symptoms.[68]

In summary, Plaintiff failed to establish the ALJ erred by discounting Plaintiff's symptom reports.

## C. Step Four: Plaintiff failed to establish error at step four.

Plaintiff contends the ALJ erred at step four. First, Plaintiff argues that, because he is limited to less than a full range of sedentary work, he is older than fifty years old, and he does not have any transferable work skills, he is considered disabled under Medical Vocational Rule 201.14. Plaintiff fails to identify how the RFC limits him to less than the full range of sedentary work. Sedentary work is defined as work:

> involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.[69]

---

[68] *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

[69] 20 C.F.R. § 404.1567(a).

The RFC limits Plaintiff to "sedentary work as defined in 20 CFR 404.1567(a)."[70] The RFC then prohibits Plaintiff from climbing ladders, ropes, and scaffolds and limits the time for Plaintiff to climb ramps and stairs to occasionally, and stoop, crouch, kneel, or crawl to rarely (no more than 15% of the workday).[71] However, the postural limitations do not significantly alter the ALJ's exertional finding that Plaintiff could perform sedentary work.[72] Moreover, the vocational expert testified that sedentary jobs were available with these postural limitations., i.e., research and development assistant.[73] Plaintiff's first argument lacks merit.

Second, Plaintiff argues the ALJ failed to 1) include a sit/stand option in the RFC and 2) meaningfully assess whether Plaintiff retained sufficient concentration

---

[70] AR 19.

[71] AR 20.

[72] *See* SSR 96-9p ("An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.").

[73] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

and ability to perform SVP 6 work in light of his pain and fatigue. Plaintiff's arguments are based entirely on his initial arguments that the ALJ erred in considering the medical-opinion evidence and Plaintiff's symptom reports. For the above-explained reasons, the ALJ's consideration of the medical-opinion evidence and Plaintiff's symptom reports was legally sufficient and supported by substantial evidence. The ALJ adequately incorporated the supported clinical findings into a succinct RFC.[74] Moreover, to the extent the evidence could be interpreted differently, it was the ALJ's role to resolve conflicts and ambiguity in the evidence.[75] The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing past work.

## V.     Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.     The Clerk's Office is directed to substitute Andrew M. Saul, the Commissioner of Social Security, as the Defendant.

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

3.     The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

---

[74] *See Rounds*, 807 F.3d at 1006.

[75] *See Morgan*, 169 F.3d at 599-600.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 21st day of November 2019.

_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge